Good morning. May it please the Court, Chief Judge, Counsel, my name is Rhys Allmond. I represent the appellant in this matter, the Sioux Falls School District. The issue in this appeal really boils down to when can a public school district replace one female sport with two separate female sports and be compliant with Title IX. Specifically here, the Sioux Falls School District sought to eliminate its gymnastics program while adding girls wrestling and softball, with the net result being an overall increase in female participants in sports in the Sioux Falls School District. The District Court concluded, however, that the elimination of gymnastics, despite the overall increase in actual athletes that it added to the program, would likely violate Title IX's effective accommodation requirement and ordered the District to reinstate its gymnastics program. And that finding resulted from an incorrect interpretation and application of Title IX law, and therefore the District seeks reversal of that decision. Now, before diving into the three-part test that we're all familiar with when we're talking about Title IX's effective accommodation requirement, I first want to start with the actual language of the statute that we're talking about here. And that is 20 U.S.C. 1681a, the Title IX statute. And the operable language with respect to what we're talking about today is that no person shall, on the basis of sex, be excluded from participating in any activity or program. It went undisputed below that no female within the Sioux Falls School District is excluded from participating in any sport. It does end with any discrimination, whatever that means, right? It does include that in the original language. Yeah. It says excluded, denied, and subject to any discrimination. So proceed. Correct. But you're not really asking us to revisit the whole area of law, are you? Absolutely not. But it is important to remember, to see the forest through the trees. It is important to remember what the statute and the plain language of the statute actually says. I understand. But unless you're asking us to abandon the three-part test and so forth. And I'm not, Your Honor. And but it is important to remember the three-part test is intended to do justice to the law, the language, the plain text of the statute. So it's important to keep that language in mind. And I think what's unique about this case, which doesn't exist in many of the cases, is that there simply was no evidence, and there isn't, that any female participant was excluded from participating in any sport within the Sioux Falls School District. And that's a fact that the Sioux Falls School District is very proud of. So jumping into the three-part test, since that's where we're going to be spending most of our time today. Courts? It sounds like you're focused on the second one mostly. Is that right? You're leading into my argument, Judge. I want to start with prong two. And before getting there, I think it's important to note that three-part test provides three separate avenues in which to comply with Title IX's effective accommodation requirement. And I do want to start with prong two, because in my view, that is the most glaring error that the district court made below when it analyzed prong two. And prong two looks at whether the district has a history and continuing practice of explaining its female athletics program. The district court found that the school district does have a history of expanding its female program properly, made the correct decision there, but then went on to erroneously find that the district cannot show, or likely cannot show, that it has a continuing practice of expanding its female athletic program because it eliminated its gymnastics program, contrary to the interests of some students that wanted to participate in gymnastics. That finding was an incorrect application of Title IX law, because prong three of the three-part test looks at whether or not there are interests of individual students in a particular sport, and whether or not those interests are being fully and effectively accommodated. That's the reason the court, the district court, said we weren't able to comply with prong two. But that's a prong three analysis. Prong two, on the other hand, looks at whether or not the program as a whole expands, not whether or not there's an individual sport that there's sufficient interest that you should be providing. Prong two, as the 1996 clarification makes clear, looks at the program as a whole. And we know this because the 1996 clarification explicitly recognizes that prong two is available even when a school eliminates a sport, provided there is an overall expansion in the program. We know that from the 1996 clarification. It also provides an example of that very thing happening, which we cited in our reply brief, or an illustration showing, hey, a school can eliminate a program, and as long as it does so in the context of an overall expansion of the sports, as long as the overall program is going to expand. How do you decide whether the overall program has expanded? Yeah. If there's a net, you know, over what period of time do you look? I don't think there's a real clear answer to that in any of the case law. Certainly not in the Eighth Circuit that I've seen, or any circuit for that matter. But you look at, I think, the all-year case looked at the last ten years. Ten years? Which case? All-year out of the Ninth Circuit. The Ports case at the district level looked, I believe, at the last 12 years, but specifically really at the last five, when it found, hey, in the last five, there's actually been a decrease in numbers. The Eighth Circuit didn't really assess, as far as I could tell, the prong two part of the three-part test in Ports, but if you look at the district court opinion, the district court really honed in on the last five years and said numbers decreased in the last five years. That doesn't sound like program expansion. What are you talking about with softball, wrestling, and gymnastics? Yep. So wrestling was added in the 2021-22 school year. Softball was added in the 2022-23 school year. And then gymnastics was going to be removed in the 23-24 school year. So you want the court to look at the three-year period and say, taking them all together, it's still trending upward? I actually think it's appropriate to look at the prior 17 years. But certainly the prior... Well, just focus on those three years. Say again? Kind of answering the question. Just focus on the three years and tell us how you do... I don't think that's at least not clear from the district court's opinion. In those years, what are the raw numbers? Yeah. In the prior three years, the female numbers from 2000 were 1000 participants. Wait a minute. 2020. Sorry. 2020. Say it again then. The female numbers were 1000 participants. 2021, there were 1,214 participants. In 2022, there were 1,229 participants. So an increase in each and every year. But does that include the gymnastics proposal or not? That does not... Where would we end up in 2022? The gymnastics numbers actually were decreasing during those years. No, I'm saying if you eliminated gymnastics, where would that leave you the next year after the 1,229? In terms of the current school year that just finished up? Well, that would depend on the numbers of the participants in the other sports during the school year. But if you assume they'd all stay the same, which... So you would just subtract the gymnastics number? Just subtract the 57 gymnasts. So you'd be down to 11,000. But if you look just at 2023, and this is in your brief, women's softball began in 21, did you say? 23. That was the first year of women's softball. Okay. Which one began first? Which one of the women's sports began first? Girls wrestling would have started... And that has 25 participants. Softball has 96, right? Correct. And of course, together that's 121. And gymnastics had 57. So looking at those three, there was 121 added to the other two sports and 57 to be lost in gymnastics, right? Correct. Okay. So a little over 60. Yeah, net increases. Net increases a little over 60. And if you were to actually look at those gymnastics numbers, the 57 or 57 gymnastics participants, 10 of those were middle schoolers. So if you were to count middle schoolers for wrestling as well, there were an additional 39 middle school wrestlers. So this record doesn't have these total numbers on comparable basis, like the chart you put in your brief on page 18? The affidavit of James Stavum has all these numbers, numbers for gymnasts, middle schoolers, as well as wrestling middle schoolers. That is in the record, Your Honor. But there's not one chart that puts them all together, is there? No, I don't believe so. I don't think so either. So you're saying it's actually a greater increase than the 60 because the numbers you were quoting didn't include the middle school wrestlers? If you're going to count gymnastics middle schoolers, which is counted in that 57, we just think it's appropriate. So it would be 103 additional if you were to count middle school wrestlers. But if you don't count middle school wrestlers, then it's still 64, I believe. How many of the gymnastic students does the record reflect this? I didn't see it anywhere, but I may not have understood that affidavit. But how many of the gymnastic students were at a school where they didn't have enough for a team because those would be subtracted for this purpose? Yeah, within the record, there are four high schools within the Sioux Falls School District, only two of which competed at the most recent state tournament because the other two didn't have sufficient numbers to compete. How many gymnastic students were at the other two? The record does not reflect that, actually. That's what I thought. Yeah. Okay. We don't know whether it's a lot or a few. Say it again? That comes down to whether or not there was a viable team. And we're not arguing on appeal. We contest there was a viable gymnastics team for the reason that not all four high schools could support it. But that's not the issue in prong two. The prong two does not ask, is there a viable team? Yeah, but I'm trying to get some fair facts here. Yep. I'm just trying to figure out a few facts. Pardon me. But that's all I'm driving at. My picture point is you think historically there's an upward trend, and even with the reduction of gymnastics, the other two additions continue the district on an upward trend. Yeah, the raw numbers show it. I mean, this is just math. Over 60 additional athletes after eliminating gymnastics and adding wrestling and softball. There's one additional sport offering. They added two, subtracted one. There's over 60 additional female athletes in the school district as a net result because of the district's actions. Counsel, I've got to ask you another relative factual question. In gymnastics in some states where we have small schools, one person can go compete for a school. I'm sitting here. Does the record reflect that here? I don't think the record reflects that. Okay. Proceed to say something worthwhile. At this point, Your Honor, I'm going to reserve the rest of my time for. . . Counsel, I have a question. I read that one of the things that the plaintiffs did here to try to persuade the court to enter this preliminary injunction was to come up with some people who would agree to coach gymnastics. Did the record develop anything about that? I mean, it's one thing to be, for a person to say, yeah, I'll coach gymnastics. It's another thing for a person to be qualified to coach gymnastics and to be someone that a particular school district would want to hire. Was that something that anybody, there was any contest over, or is the school, is that . . . The record does not reflect that, and I don't think it's a consideration for this appeal, but a gymnastics program was had this school year. There were sufficient coaches to coach it this year. It was what? They had a gymnastics season this year as ordered by the district court. Oh, I see. Okay. So with that, Judge. . . What about the two steps up, one step back approach comment? I think that highlights the error in the district court's decision because the 1996 clarification specifically says that's okay. You can eliminate sports, provided those two steps up are longer steps than that step back. As long as there's that program expansion, you can take that step back, as long as those two steps forward are longer steps. So I think that right there actually highlights the error in the district court's analysis of prong two. You may reserve. Thank you. Ms. Wilka, we'll hear from you next. Thank you. Good morning, Your Honors. May it please the Court, Counsel, my name is Claire Wilka. I'm an attorney from Sioux Falls representing the Appalees in this case, the young girls who are enrolled students in the Sioux Falls School District and who intend to compete in the girls' gymnastics program for their high school. The school district eliminated girls' gymnastics from the budget despite fierce opposition from parents, students, and coaches in the Sioux Falls community. Following that decision, my clients filed this action on the ground that it violated Title IX. Title IX has been the law of the land for over 50 years, and proper enforcement of it, including its three-part test, is vital to ensure that women and girls continue to receive equal access to the benefits that participating in athletics offers. Now, the Sioux Falls School District's appeal here today presents a radical departure from well-settled Title IX law. It asks this Court to apply Title IX's test differently to high schools in a way that the district court really did not have the opportunity to consider below. But even if it had, the Sioux Falls School District's new methodology, this idea, particularly in prong one, this idea that we're to count theoretical opportunities instead of actual athletes to determine compliance, is not supported by evidence in the record, which again comes to this Court on a preliminary basis following the entry of a preliminary injunction. So the district court correctly applied Title IX's three-part test here. The school district concedes that the three-part test should apply to high schools. So the issue, as the school district frames it, is this new strict compliance argument that it makes. Again, it never made this argument below to the district court, but it essentially is saying that the three-part test must be applied differently to high schools and only when appropriate. But strict compliance is not really the appropriate framework or an accurate depiction of the issue that we're looking at here today. The district court never said strict compliance was required, and the three-part test, by its very nature, is extremely flexible. The school gets to decide which of the three prongs it wishes to rely upon. And so the application of the test is always fact-specific. It's always going to depend on the circumstances, and the district court did that here. It did that in accordance with well-established precedent. It followed the 1996 clarification. It cited examples from the record, and those record facts really aren't disputed on that proportionality gap. And so Mr. Allman didn't touch on this too much, but I do want to touch on this prong one analysis. The argument that they made in their brief, the school district, said that the district court reverted to a statistical test in analyzing prong one. That's simply not true. When you look at the district court's well-reasoned opinion, it considered the data in the record, which again came through Dr. Stabum's affidavit, that Exhibit A and Exhibit B attached to her affidavit, and it counted only actual athletes in computing that proportionality gap. It was appropriate to do this because Title IX says that we're to look at the actual benefits that are provided to real students. And so this idea that when you consider the ordinary definition of opportunity, as the district court argues here in appeal, it doesn't cut anyone from a program or from a team, and more sports are offered to girls, that's not what we look at for prong one. We're looking at actual athletes because we're, again, trying to encourage and help give more girls opportunity to sports. And so I just want to note clearly that the school district's argument on prong one is directly contrary to what the Office for Civil Rights rejected in the 1996 clarification. And so it was appropriate for the district court to look only at actual athletes in applying the three-part test. Now, the chart we've all been looking at, which I think comes from Dr. Stevens, I have her name right, don't I? Dr. Stavum, yes. Stavum, you're right, I'm wrong. But that is actual athletes, right? I'm sorry? That is actual athletes, right? Yes, that is based on actual athletes. If that's okay, if you look at the last three years or four years or whatever period like that, it looks like they're increasing the number of students. Yes, and thank you for that. That does get into more of this prong two analysis and the present program expansion issue, which... Why don't you address that? Why isn't that a sufficient basis for the district to rely on for compliance? Yes, so I think also if you look at Dr. Stavum's affidavit in that chart, Exhibit A, it shows that the trend is going the wrong way in the last few years. So while the school district has made some progress historically when you go back to 2004 or 2005, I think back then they had a 12% gap and they made some progress, but then in the last few years it has been increasing again. The gap has been increasing. How could the gap be increasing? Explain this to me if the numbers the last three years that you heard us discuss are true. How could the gap be increasing? Well, I think it doesn't... The raw numbers that Mr. Allman is focusing on of increased athletes does not account for increased enrollment numbers at the same time. And the gap is measuring athletic participants against enrollment numbers. And so enrollment is also expanding. Boys' and girls' enrollment is expanding in the same time frame. And so the gap is we look at that for prong one, but we also can look at it to see kind of that trend for prong two. And speaking of those numbers in the last three years, I just want to touch on this fact. There was some discussion with Mr. Allman about that raw net increase. I think the district court correctly framed this issue factually. It was a two steps up, one step back approach. And that was a judgment. Why isn't that error under the 1996 clarification? If the district is adding two new ones and withdrawing one, are you saying that unless they are up to full equal participation, they can never eliminate a sport and satisfy prong two? No, I am not saying that. I think the district... Sure. So I think considering the context, first of all, girls' wrestling was added a couple of years ago, and girls' softball was added before. They weren't added as part of a plan saying we're going to eliminate girls' gymnastics and we're going to add these two sports at the same time. I think that's one piece that would have been fleshed out when we get to the merits. Why does that matter? Why do they have to have a declared plan? Are we just looking at the ultimate question, whether there's an increasing trend? Yeah, I think that's because the 1996 clarification guidance says that an institution, when you're looking at this question for prong two, you're looking at the institution's current implementation of a nondiscriminatory policy or the current implementation of a plan of program expansion that responds to the developing interests and abilities of the students. And so that second part is key, and that was cited by the district court in the opinion. Do you think they could have done it this way if they had said it in 2020, we have a plan? And our plan is we see a big increase in wrestling interest. The University of Iowa's got women's wrestling now. It's going to be a big high school event. So we're going to add wrestling. We're going to add softball. But gymnastics is trending the other way because of all these private facilities, and there's more cost and so forth. So we're going to have a plan where we add the two and subtract the one. That would have been okay? I think that would be an okay. Theoretically, yes, that could have been okay. Other cases have kind of acknowledged that a lot of these lawsuits start when an institution creates a Title IX plan. We're going to add this sport, subtract this sport. And they have to tie it to those developing interests. So I think that's possible, but we didn't have that in the record here. Just struggling with why it would make a difference, whether they declared ahead of time we have a plan as opposed to just implementing the same thing without a declaration of plan. Sure. I don't think the plan itself is absolutely critical in a written document. It's the idea that they thought through the issue, that they decided we are going to be adding these sports because they respond directly to the interests and abilities of students in our school. And something that we have in our record here are some interest surveys that the district court did consider. And those interest surveys from, I believe, November of 2021, showed that more girls were interested in girls' gymnastics than they were in girls' wrestling and girls' softball. But, Counselor, I thought we were supposed to go by the actual numbers. We are. So we don't go by these interest surveys. We have to look at the interest for program expansion because prong two is, again, tied to the developing interests and abilities of the students. So we look at actual athletes under prong one especially, and I think that's a starting point for prong two. But prong two and prong three are about the positive ongoing expansion efforts. And OCR has told us we're supposed to look at what the students are interested in. And so what's your point about the surveys? Just that the district court properly considered that in the record here  What do they say that's important about prong two? So more girls in those surveys, more girls indicated interest in girls' gymnastics than girls' wrestling or softball. Now, is there an and in your second? Did they compare softball and wrestling together with gymnastics? Not that I'm aware of. The surveys are broader. They're for all athletes, male and female, for all sports. And so I don't know that there was a comparison between wrestling and softball specifically. I saw a figure of 113 girls interested in gymnastics. Yes. And what struck me about that is, 113 seems like an extremely large number of participants in a single team. So in this Can you give us any information about that? Well, in this case, we have four separate high schools in the Sioux Falls School District. And there were also surveys done of the middle school girls. And so I know Mr. Allman was talking about the middle school wrestling numbers. The school district cut the middle school gymnastics program. And so any middle schoolers who now want to participate in gymnastics can only do so if they join the JV or the varsity team for a high school. And so we can't count those middle school wrestlers. It's a different scenario, common sense. My friends, I'm in seventh grade. My friends are going out for wrestling. I'm going to try it too, versus I'm going to go try out for the varsity team at the high school. Did the surveys sort out whether the students would participate in gymnastics through the school versus at one of these private facilities? No, the surveys didn't address any club participation. Club participation is the right terminology. Correct, yes. I'm just saying, could that 113 be overstating what would actually be the interest within the school system? I think that's certainly possible, just considering any survey. I mean, it's up to the students to fill it out how they want. So I think that's possible, yes, Your Honor. Are the surveys in the record? I'm sorry? Are the surveys in the record? Yes, they are. Thank you. I think it's 107 for softball and 44 for wrestling. Does that sound right to you? For last year on the surveys? Yes. Counsel? I believe, I trust you are reading that. I'm not sure I have the right document. That's why I was asking. Yes, I think that's the 2021 survey. Yes, that's correct. Okay. Is anything going on in the district court that we need to know about? At this time, the district court has stayed. The proceedings depend... In the record, I saw a reference to a settlement. There was an interim agreement reached on some aspects of the case, but the parties still have a live controversy associated with this appeal. But the parties still what? Have a live controversy associated with this appeal. Is it set for trial? No, the district court proceedings are stayed at this time. So there was an injunction entered, so the district was not able to discontinue the gymnastics program. Is that right? Correct. Is it ongoing for this school year? Yes. The district court entered the preliminary injunction in October of 2023. The gymnastics season went forward. All four schools had the coaches and participants and participated in the season this past year. Did all four field squads? Yes. They combined them at two of the four high schools. Okay, so all four didn't. All four had a separate team, but they shared a head coach. So two schools shared one head coach. Two schools shared another head coach because that was the level that the sport was offered in the prior year. But in the competition, there were four teams. Four separate teams. Because there's a team issue. Four separate teams. And on that point, I will just point out that Coach Les Coyne, his affidavit in the record disputes Dr. Stabum's affidavit. During the 2022-2023 year, two teams made the state tournament. One of those teams just didn't make the state tournament based on points. It wasn't based on the number of their team. I believe one of the four teams did not. But the decision that we're talking about here that your clients object to was to eliminate gymnastics at all of the high schools. Correct. Yes. Yep, they make one decision that applies to all four of their schools within the school district. I see I'm out of time, so thank you very much, Your Honors. Thank you for your argument. Mr. Allman, you have a little bit of time remaining for rebuttal, if you'd like. Thank you. Quick correction. There were not sufficient gymnasts this school year to field teams at each high school. One high school, I believe, had one gymnast go out for it. Not in the record, so I don't think it can be considered on this appeal, but you asked the question, and I want to provide the accurate answer. As far as the surveys go in 2021, they were simply surveys. A hundred and some girls said they were interested in gymnastics. When it came time to actually participate in gymnastics, only 56 and then 57, or 58 and then 57 the following year actually participated. That is about 1.2% of the female population within the Sioux Falls School District participating in this sport. This was the 10th of 12 most popular sports in the Sioux Falls School District. The undisputed facts show that in the five years preceding the district's decision to eliminate its gymnastics program, it increased the number of female athletes, the number of athletes themselves, by 31%. And if you were to remove gymnastics from the final year that we have numbers for, that increase would have been 25%. And in those five years, gymnastics numbers are decreasing. Those numbers are in Exhibit B to the Dr. Stavum affidavit. So gymnastics numbers are going down, yet overall girls' numbers are going up. The district had that information available and made a decision, which circuits have recognized that districts and schools should have flexibility in deciding what sports they're going to offer. So the district used that flexibility, and I believe that flexibility should not be disturbed absent a clear violation of Title IX. And here there is not a clear violation. In fact, prong to the evidence, the raw numbers show that there was an overall expansion in the last five years, in the last 10 years, in the last 17 years. Excuse me. On this argument that was made about having a plan, is there anything in the record about what, assuming that it's relevant, is there anything in the record about whether the district considered these three sports? No, there's not a clear, hey, the district did this in the record because we were at the preliminary injunction stage. But I think you can infer that they were doing surveys. They did a survey in 2021 to see the numbers. They had committees. That's in the record. They had a committee of sports and athletics. So yes, I think it's not fair to say they didn't consider this and the effects of the decision. And we know in discovery they absolutely did. It's just in the record that you guys had before you, there's not a clear, hey, here's the plan. But if the case were to flesh out a little bit more, I think you'd establish it. It wasn't this ad hoc decision. And so the status we're in now is the season is over for 23-24, the gymnastic season. Correct what the district would like to do, I guess. The injunction is lifted, is eliminated for 24-25. The district would certainly like guidance from this Court about when it can eliminate any female sport. And I think every school district within the Eighth Circuit would like to know the answer to that question. We don't just sit here cases to give guidance. Well, there's certainly a controversy here to provide that guidance. So we're not asking you to just do so. Well, is the district saying they want to eliminate the gymnastics program next year? Have you changed your view on that and you're going to retain it? Yeah, as part of the district has. You really have to inform us if you don't want to eliminate it. The district has committed to providing gymnastics next year. It has. It does like permission or guidance to know that it may eliminate it perhaps at some point after next year. So in 24-25, there will be gymnastics at these high schools? Correct. And where would we – is that documented in school board minutes or something? No. In the record? Well, is it something of which we could take judicial notice? The district issued a press release saying that this program will continue for 24-25. So what's the current controversy? Well, one, the district every year assesses what programs it's going to offer in terms of female sports. So if it wants to cut a different female sport, the controversy is still very much alive. In terms of future years, after next year, the year after, the year after, the year after. I don't know about that. I thought the controversy that gave rise to this lawsuit was a challenge to a declaration by the district that it was going to eliminate the gymnastics program. Well, the district did eliminate the gymnastics program via its budget process. And the court ordered it to reinstate it. Right. But I don't think you can say, well, there's a continuing controversy because they might want to eliminate some other program. It would be a different controversy. I don't think it's any different than the Roe v. Wade abortion context. That controversy is very much still going to be in existence every single year that the district looks at its sports programs and decides, hey, do we want to keep it? Yeah, but there's not a concrete controversy until they eliminate the program. Well, right now they cannot. And somebody sues about it. Right now they cannot under the court's order. We're asking that order be reversed. Why don't you try the case? A variety of reasons. One, the — I mean, you've got a preliminary injunction. Why not just, you know, get the thing over with, get a decision? Yep. The time and resources devoted to trying such a case, the experts involved. I mean, this is a school district. Its job is to run schools. Four high schools, several middle schools, 20-some elementary schools. Its job isn't — its focus isn't to litigate cases. There's obviously the risk and concern of attorney's fees exposures in this type of case. So — Has the district said that we're doing it next year, but we're going to eliminate it thereafter if the court allows it? No. I mean, the district hasn't committed to eliminating it at any point in the future. In fact, there was just a new school board — Why isn't the case moved? Why isn't the case moved if the district — Because right now the — — rescinded the — on its own initiative has rescinded the elimination of the program. Right now the district is prevented from eliminating it, period. Because of the preliminary injunction order. But I thought you said they've declared that whether or not there's an injunction in place, the program will continue. They've agreed to continue the program for a finite period of time, but they still want to be able to eliminate it or have the option to eliminate it. And again, we're talking about a public school district operated by public school officials that come in and out every year. So after next year, the new school board might say, we love gymnastics. We don't want to eliminate it. Is that the settlement that is reflected in the district court? That was part of the settlement, yes, that we would continue operating gymnastics. Is that in the record? No. Well, you say part of the settlement is we would continue operating gymnastics. Is that the word? Temporarily. Temporarily. We'll continue operating it temporarily. Yep. And how long the district operates will depend on the circuit's ruling. In other words, if this circuit reverses, the district will be able to eliminate the program sooner than if this circuit affirms. Unless they decide to keep offering it. Unless the school board at the time decides, hey, we actually think gymnastics is a great sport. It's in the best interest of the district. And really that's where I think gets to the autonomy of locally elected officials. But if there were really a conference, you think they would have said we're going to eliminate it next year if the court allows it? Well, as any settlement, parties make certain concessions that they don't want to make to avoid other risks. I don't understand what was settled then. The lawsuit was not settled, as I understand it. Correct. Do you think you've been forthcoming with the court, as you should be, as to what we should know to determine if there's a live controversy? Yeah, I do very much believe there's a live controversy here. I know you believe that, but do you think we have the relevant information to make our own decision on it, or should we be summoning additional record material? Yeah, I think based off of our discussion here this morning, I think you do have the relevant information. Well, we had to pry it out a little bit, I'm afraid. I don't know. I'm a little wondering if we've got everything that we need. To follow up, it would be maybe pertinent to know if the future of the gymnastics program and the position of the school district, the position of the school board in perpetuity hinges on this appeal. And that depends on future school boards. In fact, we just had a school board election a few weeks ago, so we've got one new school board member in there. Well, maybe the case is moot then, because the school district has voluntarily agreed to continue the program, regardless of the injunction, and there's no reasonable expectation that the district will eliminate it. I'm happy to submit a Rule 28J letter to explain why the case is not moot. I did a decent dive into it, and I believe it's very much alive. I mean, the district every single year looks at what programs it's going to offer. Right now it's being told it can't eliminate not only gymnastics, but under the district court's rationale it can't eliminate any female sport, the way the numbers currently are. But the district court's injunction only applies to Sioux Falls School District's gymnastic program and the semicolon on the preliminary injunct from, preliminary enjoined from sentence. Right, but the rationale is going to apply to every single female sport within the school district. But that doesn't mean there's a controversy, a live controversy over whether the district can eliminate softball. You seem to be saying because whatever we say in this appeal will inform them whether they can eliminate softball or cheerleading or whatnot, there's a live controversy. If that's your view of mootness, then maybe we do need some supplemental briefing. Well, there's the gymnastics itself. But I do think it's broader than that as well. Before you file anything, let the court consider the matter, and we'll advise counsel if we want to hear from you about mootness. Can we leave it at that? We'll leave it that way. All right. Thank you for your argument.